164                        71 Mass. App. Ct. 164 (2008)

Commerce Insurance Company *v.* Empire Fire and Marine Insurance Company.

COMMERCE INSURANCE COMPANY *vs.* EMPIRE FIRE AND
MARINE INSURANCE COMPANY.

No. 06-P-1876.

Middlesex. November 14, 2007. - February 1, 2008.

Present: KAFKER, SMITH, & KATZMANN, JJ.

*Contract,* Insurance. *Insurance,* Motor vehicle insurance, Construction of
policy, Coverage, Subrogation. *Subrogation. Motor Vehicle,* Lease
agreement. *Bailment,* Motor vehicle.

In an action seeking a judgment declaring the rights and obligations under
automobile insurance polices for the payment of claims arising from the
operation of rental vehicles, the trial court judge did not err in concluding
that the plaintiff (the insurer of the individual drivers who had rented the
vehicles) was responsible for the losses as the primary insurer, where the
rental contracts specified that the drivers, by declining the collision dam-
age waiver option offered in the rental contracts, were personally responsible
for any damage to the rental vehicles; where the plaintiff's insurance poli-
cies with the drivers covered damage to the drivers' vehicles, regardless of
fault; and where provisions in the plaintiff's insurance policies requiring
the drivers to exhaust coverage under the insurance policies of the owners
of the vehicles (i.e., the rental companies) before resorting to the drivers'
own coverage simply did not apply. [167-168]
The insurer of motor vehicle rental companies (defendant) could recover by
means of subrogation against the individual drivers of damaged rental
vehicles, where a provision in the applicable policies removed bailees such
as the drivers from the class of the defendant's insured (against whom no
subrogation could be maintained), and where the drivers were fully aware
that they would be held personally liable for any damage to the rental
vehicles and could not reasonably have expected to benefit from the rental
companies' insurance policies. [168-170]

CIVIL ACTION commenced in the Superior Court Department on
March 4, 2004.

The case was heard by *D. Lloyd Macdonald*, J., on motions
for summary judgment.

*Peter J. McCue* for the plaintiff.

*Kevin M. Truland* (*Richard W. Jensen* with him) for the
defendant.

SMITH, J. On March 4, 2004, the plaintiff, Commerce Insurance Company (Commerce), filed a complaint in the Superior Court against the defendant, Empire Fire and Marine Insurance Company (Empire), seeking a judgment declaring the rights and obligations of the parties under their automobile insurance policies for the payment of claims arising from the operation of rental vehicles by Commerce's insureds. Empire filed its answer and counterclaimed, seeking a declaration that Commerce was responsible for the losses as the primary insurer. Empire and Commerce filed cross motions for summary judgment. After argument, the motion judge denied Commerce's summary judgment motion and allowed Empire's motion, thus requiring Commerce to reimburse Empire on behalf of its insureds for the full amount of the loss, less any deductible. Commerce filed a timely appeal.

*Facts.* The material facts are undisputed. In 2000, several Massachusetts licensed individuals (renter-drivers) rented temporary replacement vehicles from Revolution Replacement Rentals (Revolution) and Eastfield Auto Sales, Inc. (Eastfield) (collectively, the rental companies). The rental companies were insured under identical commercial lines policies issued by Empire. The renter-drivers were insured by Commerce under the sixth and seventh editions of the standard Massachusetts automobile insurance policy, which also provided optional comprehensive and collision coverage. At the time of the rentals, each renter-driver declined the "collision damage waiver"[1] option offered by the rental companies and contained in the rental contracts.[2]

Because the renter-drivers did not purchase the collision

---

[1] A collision damage waiver is "any contract or contractual provision whether separate from or a part of a rental agreement, whereby the rental company agrees, for a charge, to waive any or all claims against the renter for damages to or loss of the rented private passenger automobile during the term of the rental agreement." G. L. c. 90, § 32E ½(A).

[2] The rental contracts provided the following: "This contract offers, for an additional charge, a collision damage waiver to cover your financial responsibility for damage to the rental vehicle. Your personal automobile insurance may already cover you for damage to a rental car. The purchase of a collision damage waiver is optional and may be declined. *For Massachusetts drivers*: If you have an automobile policy on your personal vehicle with coverage for collision, your policy will cover collision damage to a rental vehicle, less the

damage waiver, the Revolution rental agreement provided: "You are responsible for all damage or loss of the vehicle resulting from collision, theft, vandalism, fire, or acts of god regardless of fault . . . . The renter agrees to make a claim with his/her insurance carrier for any damage and related costs. The renter further acknowledges that his/her insurance is primary." The Eastfield rental agreement provided: "If I decline optional PDW [collision damage waiver], I will pay [y]ou 100% of all [l]oss whether it is [m]y fault or not. Loss includes the cost of the the [c]ar if it is stolen or lost, cost of repairs and [y]our out-of-pocket expenses including loss of use, administrative, appraisal, towing and storage costs." Thus, in declining the protection of a collision damage waiver, the renter-drivers agreed to subject themselves to personal liability for any damage to the rental vehicle.

The rented vehicles either were involved in motor vehicle accidents or were stolen or vandalized. The rental companies submitted claims to Commerce pursuant to the rental agreement with the renter-drivers. Commerce refused to pay the claims. When Commerce refused to pay, the rental companies submitted the claims to Empire for the losses pursuant to Empire policies with the rental companies. Empire paid for the losses and brought subrogation claims against Commerce. Commerce then brought this action for declaratory relief.

After argument and review of the summary judgment record, the motion judge ruled that the renter-drivers were personally liable to the rental companies for the damage to the vehicles during the rental period under the express terms of the rental agreement, that the Commerce policies directly covered the loss to the rented vehicles, and that the renter-drivers were not insured under the Empire policy for the loss to the rented vehicles. Therefore, the motion judge ruled, Empire may subrogate to the rights of the rental companies to seek payment for the loss or damage to the vehicles. We affirm.

*Discussion.* 1. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material

deductible on your policy."

facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). On review of summary judgment, the court considers "the record and the legal principles involved without deference to the motion judge's reasoning." *Clean Harbors, Inc.* v. *John Hancock Life Ins. Co.*, 64 Mass. App. Ct. 347, 357 n.9 (2005). "The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982).

2. *The primary coverage issue.* Commerce argues that the rental companies had purchased their own collision and comprehensive coverage from Empire and those policies stated that Empire's collision and comprehensive coverage was primary.[3] According to Commerce, the fact that the renter-drivers are not insureds for purposes of Empire's collision and comprehensive coverage does not make Commerce's coverage primary. Furthermore, Commerce contends that the language of its own policies makes its coverage in excess of Empire's coverage.[4]

Pursuant to the rental contracts each rental-driver had with the rental companies, the rental-drivers were personally responsible for any damage to the rented vehicles. Further, the collision and comprehensive portions of Commerce's policy cover damage to the insureds' vehicle ("your auto"), regardless of fault. Commerce defines "your auto" as "[t]he vehicle or vehicles described on the [c]overage [s]elections [p]age [or] [a]ny auto while used as a temporary substitute for the described auto while that auto is out of normal use because of a breakdown, repair, servicing, loss

[3]Empire's insurance policy with the rental companies states: "For any covered 'auto' you own, this [c]overage [f]orm provides primary insurance. For any covered 'auto' you don't own, the insurance provided by this [c]overage [f]orm is excess over any other collectible insurance."

[4]Part 7 ("Collision") of Commerce's policy states: "If an auto covered under this [p]art is not owned by you at the time of the accident, the owner's auto insurance must pay its limit before we pay. Then, we will pay, up to the limit shown on your [c]overage [s]elections [p]age, for any damage not covered by that insurance less the deductible amount you selected." Part 9 ("Comprehensive") of Commerce's policy is nearly identical, with the final clause providing for payment "for any damage *or loss* not covered by that insurance less the deductible amount you selected" (emphasis supplied).

or destruction." Commerce conceded, both before the motion judge below and in its brief, that at the time the losses to the rental vehicles were incurred, the rental vehicles were covered by the optional collision and comprehensive parts of the renter-drivers' Massachusetts automobile insurance policies issued by Commerce.

Commerce seeks to avoid payment based upon "the other insurance" provisions in both the collision and comprehensive provisions of the policies. The "other insurance" language dictates that:

> "[i]f an auto covered under this [p]art is not owned by you at the time of the accident, the owner's auto insurance must pay its limit before we pay. Then, we will pay, up to the limit shown on your [c]overage [s]elections [p]age, for any damage not covered by that insurance less the deductible amount you selected."

See note 4, *supra.* Commerce contends that the "other insurance" language makes its coverage of the renter-drivers to be excess because the cars were owned and fully insured by the rental companies at the time of the loss.

Commerce agrees that this language is not a precondition to coverage, but asserts that the language designates the order of priority between Commerce and other available insurance. *Commerce Ins. Co.* v. *Koch,* 25 Mass. App. Ct. 383, 386 (1988) (existence of other insurance was not "condition precedent" for coverage in standard automobile policy, but operated to reduce secondary insurer's liability). There is no collision or comprehensive coverage available to the renter-drivers under the Empire policy. Therefore, insurance provisions requiring the renter-drivers to exhaust coverage under the owner's policy before resorting to their own coverage simply does not apply. Thus, we reject Commerce's argument that the collision and comprehensive coverage which Commerce provided is excess coverage with respect to the rental vehicles operated by its insureds.

3. *Empire's right to subrogation.* Commerce contends that the renter-drivers are Empire's "insureds" for purposes of liability coverage and, because of that relationship, Empire can not recover from it according to the "antisubrogation rule." "It

71 Mass. App. Ct. 164 (2008)                    169

Commerce Insurance Company *v.* Empire Fire and Marine Insurance Company.

is well established that 'an insurer cannot recover by means of subrogation against its own insured.' " *Peterson* v. *Silva*, 428 Mass. 751, 752 (1999), quoting from *Safeco Ins. Co.* v. *Capri*, 101 Nev. 429, 431 (1985).

Here, the issue before the court is whether the "implied co-insureds" rule applies to the rental company and renter-driver relationship. In other words, the issue is whether the renter-drivers receive a benefit from the rental companies' insurance with Empire. If the rule applies, Empire cannot recover in a subrogation action against the renter-drivers because the renter-drivers are impliedly insured along with Empire. "The interpretation of the language of the insurance policy naming those whom it insures is a question of law." *Home Ins. Co.* v. *Liberty Mut. Fire Ins. Co.*, 444 Mass. 599, 601 (2005).

Commerce relies upon Empire's language in its rental companies policies, defining "Who Is An Insured" in Section II as "[y]ou [the rental companies] for any covered 'auto' " and "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." Commerce contends that the renter-drivers fall into the latter class of insured individuals.

We begin our analysis of Commerce's argument by noting that a clause later in Empire's policy under Section IV ("Business Auto Conditions") states, "No Benefit [t]o Bailee — Physical Damage Coverages[.] We will not . . . grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this [c]overage [f]orm."

In this matter, the relationship between the rental companies and the renter-drivers appears to be that of bailor-bailee. See *Cheek* v. *Econo-Car Rental Sys. of Boston, Inc.*, 393 Mass. 660, 661 (1985) (relationship between rental company and renter-driver was not master-servant, but more bailor-bailee). Therefore, the "No Benefit [t]o Bailee" clause removes the renter-drivers from the class of Empire's insured. See *Fritz-Pontiac-Cadillac-Buick* v. *Goforth*, 312 S.C. 315 (1993) (where policy encompassed individuals with permission to drive dealer's cars but also provided that it would not benefit bailee, there was no insurer-insured relationship between dealer and test-driver).

There does not appear to be any Massachusetts decisions

directly on point. In a landlord-tenant relationship, however, the Supreme Judicial Court held that "absent an express provision in a lease establishing [the] tenant[s'] liability for loss from a negligently started fire, the landlord's insurance is deemed held for the mutual benefit of both parties," thereby preventing the insurance company from collecting in a subrogation action from the tenants. *Peterson* v. *Silva*, 428 Mass. 751, 753 (1999). The court reasoned that the landlord and tenants were co-insured because reasonably prudent tenants would expect to obtain insurance for personal property but not for the real property they were renting. As the court explained, reasonable tenants could expect that the premises would have fire insurance protection and that, if there were fire insurance on the premises, it would also cover them. *Id.* at 754. Given the relationship, the insurance company could not institute a subrogation action against its "insured" tenants.

Unlike the tenants in *Peterson* who reasonably expected their landlord to carry fire insurance for their benefit, here the renter-drivers were fully aware that they would be held personally liable and could not expect to benefit from the rental companies' insurance policies with Empire. Therefore, Empire may subrogate against the renter-drivers.

We affirm the judgment entered in the Superior Court.

*So ordered.*