# United States Court of Appeals
## For the First Circuit

No. 11-1316

VALLEY FORGE INSURANCE CO.; AMERICAN CASUALTY OF READING, PA,

Plaintiffs, Appellees,

v.

CAROL FIELD; THE CARSON CENTER FOR HUMAN SERVICES, INC.,

Defendants,

DAVID MURPHY, as Guardian of the Child's Estate,

Defendant, Appellant.

No. 11-1337

VALLEY FORGE INSURANCE CO.; AMERICAN CASUALTY OF READING, PA,

Plaintiffs, Appellees,

v.

DAVID MURPHY, as Guardian of the Child's Estate,

Defendant,

CAROL FIELD; THE CARSON CENTER FOR HUMAN SERVICES, INC.,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

———————————

Robert J. Gilbert, with whom Rickey G. Glover and Gilbert & Renton LLC were on brief, for appellant David Murphy.
James P. Hoban, Thomas J. Conte, Lynette Paczkowski, and Bowditch & Dewey, LLP, on brief for appellants The Carson Center for Human Services, Inc., and Carol Field.
Michael P. Tone, with whom Kimberly E. Rients Blair, Wilson, Elser, Moskowitz, Edelman & Dicker, Amy E. Goganian, and Goganian & Associates, LLC, were on brief for appellees.

———————————

February 22, 2012

———————————

**LYNCH**, **Chief Judge**.  An eleven-year-old child (the child) suffered from long-term horrific abuse and on September 11, 2005, was beaten nearly to death by her adoptive mother and stepfather. The child's legal guardian, David Murphy, brought suit in the Superior Court of the Commonwealth of Massachusetts against several defendants including the Carson Center for Human Services, Inc. (Carson Center), and one of its employees, licensed social worker Carol Field, whose patient the child was during this period.  The complaint alleged that they failed to detect or report to state authorities signs of ongoing physical abuse of the child.  That state court suit led to this insurance coverage litigation in federal court.

The federal plaintiffs are Valley Forge Insurance Company and American Casualty of Reading, PA, the insurers of the Carson Center and, as such, of Field as an employee of the Carson Center. The insurers sought a declaratory judgment that the allegations against the insureds in the underlying suit fall within exclusions to coverage.  The district court granted the request for declaratory judgment.  Valley Forge Ins. Co. v. Carson Ctr. for Human Servs., No. 09-cv-30038, 2011 WL 864802 (D. Mass. Mar. 10, 2011).  The insureds and Murphy appealed.

The issue is one of policy language interpretation.  It is whether the policy language of an Abuse or Molestation Exclusion in a Professional Liability Coverage part and an Abuse or

Molestation Exclusion in a Commercial Umbrella Coverage part precludes coverage. The language of these Exclusions precludes coverage for abuse that occurs to anyone in the insureds' "care, custody or control." The question is whether the Exclusions apply where, as here, at the time of the abuse the victim was not in the physical custody of the insureds and had been receiving bi-weekly outpatient therapeutic services from them for fourteen months covered by the policies in question. We conclude, as did the district court, that the word "care" in the Exclusions is unambiguous. We reject the defendants' arguments, including that the term is limited to situations in which there is also "custody" and "control." As a matter of undisputed fact, the child was in the care of the insureds as a long-term patient, and the plain terms of the Exclusions exclude liability on the part of the insurers. We affirm.

## I.

Murphy filed the underlying suit in Superior Court on October 18, 2007. The complaint alleged that the Carson Center, Field, and other providers had a doctor-patient relationship with the child and that in each case the providers knew or should have known that the physical injuries sustained by the child while she was in their care were the result of systematic abuse by her parents. Those injuries included head injuries from a baseball bat, severe burns on her legs from standing in scalding hot water,

-4-

toenails that had been pulled off, beatings, chipped teeth, and numerous cuts, scrapes, and bruises that required sutures or had become infected.

Murphy's complaint further alleged that the negligent failure to suspect or report such abuse on the part of the Carson Center, Field, and the other providers culminated in the near-fatal brain injury the child sustained as a result of abuse by her parents on September 11, 2005, and that breach of their duties of reasonable care were substantial contributing factors to the child's serious injuries. The child's physical injuries, including paraplegia, are permanently disabling, and she has been left with significant and permanent mental deficits, for all of which she will require lifetime care.

Field was a social worker and therapist at the Carson Center in Westfield, Massachusetts, when she met the child on October 30, 2002. The Carson Center is a non-profit facility that provides psychiatric, mental health, rehabilitation, and family stabilization services to the community. Field provided therapeutic services to the child over the course of the next thirty-five months. In the state suit, Field recalled approximately fifty-one in-person counseling sessions with the child; approximately twenty different meetings or telephone conferences with the child's adoptive mother; at least four meetings with the child's other health care providers; involvement

in four of the child's hospitalizations; eleven telephone conferences with the child's medical providers; at least four telephone conversations with the child's school counselors; and four conferences with the Massachusetts Department of Social Services. Field's treatment of the child continued until the child suffered her catastrophic injuries on September 11, 2005.

This action for declaratory judgment is concerned only with Murphy's claims in the underlying Superior Court suit for the years 2002 and 2003. All told, during the period of October 30, 2002, through December 19, 2003, Field saw the child about twenty-five times, which averages to a visit nearly every other week.

The plaintiffs insured the Carson Center from December 19, 1998, through December 19, 2003. At issue is the policy provided by Valley Forge for the period December 19, 2001, through December 19, 2002, and the policy provided by American Casualty for the period December 19, 2002, through December 19, 2003. Each of these policies had five different coverage sections, for which a single premium was paid and which contained a single policy number. The coverage parts at issue are the Professional Liability and Commercial Umbrella coverage parts. These coverage parts each contained an Abuse or Molestation Exclusion. The parties do not dispute that, absent these Exclusions, the policies would provide coverage to the Carson Center and Field for the underlying suit.

Murphy has been named as a defendant in the federal suit along with the insureds and, not surprisingly, has argued that the exclusions do not apply. His arguments overlap with those of the insureds.

## II.

We review the district court's grant of summary judgment de novo, assessing the facts and the inferences to be drawn from them in the light most favorable to the non-moving party. Sparks v. Fid. Nat'l Title Ins. Co., 294 F.3d 259, 265 (1st Cir. 2002). The interpretation of an insurance policy is a question of law for the court. Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304 (Mass. 2009). Massachusetts law applies, Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003), and requires that "we construe an insurance policy de novo under the general rules of contract interpretation." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). We look first to "the actual language of the policies, given its plain and ordinary meaning." Id. The insurer bears the burden of demonstrating that an exclusion exists that precludes coverage, and "any ambiguities in the exclusion provision are strictly construed against the insurer." Id. Ambiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision; rather, "[a]mbiguity exists

when the policy language is susceptible to more than one rational interpretation." Id. at 4-5.

The pertinent part of the Abuse or Molestation Exclusion to the Professional Liability Coverage reads:

> EXCLUSION - ABUSE OR MOLESTATION
>
> This endorsement modifies insurance provided under the following:
>
> PROFESSIONAL LIABILITY COVERAGE FORM
>
> The following exclusion is added to paragraph 2., Exclusions of Section I - Coverage:
>
> This insurance does not apply to damages arising out of:
>
> 1. The actual or threatened sexual or physical abuse or molestation by anyone to any person while in the care, custody or control of any insured; . . . .

The parallel exclusion in the Commercial Umbrella Coverage part is essentially identical to the Professional Liability Exclusion and reads:

> ABUSE OR MOLESTATION EXCLUSION
>
> The following paragraph is added to 2. Exclusions, SECTION I - Coverages:
>
> This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:
>
> 1. The actual, alleged or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; . . . .

-8-

No one argues that these Exclusions should be interpreted differently from one another, so we will follow the district court and the parties in referring to a single Exclusion.

Exclusions of this type for sexual or physical abuse or molestation are not uncommon for these types of insurance policies for those who have care of others. Such exclusions appear to have been in use since 1987. See Harper v. Gulf Ins. Co., No. 01-CV-201-J, 2002 WL 32290984, *6 (D. Wyo. Dec. 20, 2002) (abuse or molestation exclusion was promulgated by the Insurance Service Office, Inc., in 1987). The court in Harper cites to an insurance reporter series entitled Commercial Liability Insurance, published by the Insurance Risk Management Institute. Id. at *6 n.9. The quoted section of that reporter makes explicit that these exclusions are used with "[o]rganizations that have care or custody of others -- schools, hospitals, nursing homes, day care centers, etc." Id. The reporter then goes on to advise: "This endorsement eliminates coverage for an insured organization's liability in connection with abuse or molestation committed by someone other than that insured." Id. The case law has adopted this concept. See Lincoln Cnty. Sch. Dist. v. Doe, 749 So.2d 943, 946 (Miss. 1999) (en banc) ("[T]he molestation exclusion accordingly serves to exclude from coverage all classifications of damages arising out of incidents of molestation.").

Exclusions of this sort have generally been found to be unambiguous in the face of attacks on various parts of the language used, and the insureds in these cases have included medical or therapeutic care providers, health care centers, summer camps, schools and preschools, job training programs, churches, and the like. See, e.g., Nautilus Ins. Co. v. Our Camp Inc., 136 F. App'x 134 (10th Cir. 2005) (underlying suit alleged child attending insured's summer camp was sexually abused by co-camper); Insights Trading Grp., LLC v. Fed. Ins. Co., Civil Action No. RDB-10-340, 2010 WL 2696750 (D. Md. July 6, 2010) (underlying suit alleged enrollee in insured's job training program was assaulted by another enrollee in the program); Erie Ins. Exch. v. First United Methodist Church, 690 F. Supp. 2d 410 (W.D.N.C. 2010) (underlying suit alleged abuse of children at insured's preschool by another child at the preschool); TIG Ins. Co. v. Smart Sch., 401 F. Supp. 2d 1334 (S.D. Fla. 2005) (underlying suit alleged teacher sexually abused two of the school's students); TIG Ins. Co. v. Martin, No. CV 00-5766, 2003 WL 25796732 (E.D.N.Y. Feb. 28, 2003) (underlying suit alleged child attendee at insured's baseball camp was sexually assaulted by an intruder); Children's Aid Soc'y of Montgomery Cnty. v. Great Am. Ins. Co., Civ. A. No. 91-7778, 1995 WL 251374 (E.D. Pa. Apr. 28, 1995) (insured Children's Aid Society agreed to provide care services to child and underlying suit alleged insured allowed child to be placed in abusive foster care situation); Sarah

G. v. Me. Bonding & Cas. Co., 866 A.2d 835 (Me. 2005) (judgment creditors of insured motel and its owners sued insurer seeking to collect damages from underlying suit alleging motel owner sexually exploited minor children at the motel); Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. Alliance Ins. Co., 757 A.2d 1074 (Conn. 2000) (underlying suit alleged sexual molestation of female child who attended insured's preschool by three young boys who also attended the preschool); Lincoln Cnty. Sch. Dist., 749 So.2d 943 (exclusion precluded coverage where male student of insured school raped female student in school restroom).

Both sides argue that the Abuse or Molestation Exclusion here is unambiguous, offering competing interpretations of its language. That competing interpretations are given does not make an exclusion ambiguous. Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 374 (1st Cir. 1991) ("[A]mbiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's." (alteration in original) (quoting Jefferson Ins. Co. of N.Y. v. City of Holyoke, 503 N.E.2d 474, 476 (Mass. App. Ct. 1987)) (internal quotation marks omitted)). The defendants contend that "care, custody or control" should be given the meaning "physical dominion or control." The insurers argue that "care" should be given its

plain, ordinary meaning.[1]  There is no dispute that the child was not in the physical dominion or control of either Field or the Carson Center at the time any of the abuse took place, and it is not a prerequisite to the application of the Abuse or Molestation Exclusion that an insured be the abuser, nor is it necessary that the abuse occur on the insured's premises.

Under Massachusetts law, whose canons of construction dictate the outcome, we must give the term "care" its plain and ordinary meaning.  In Hingham Mutual Fire Insurance Co. v. Smith, 865 N.E.2d 1168 (Mass. App. Ct. 2007), the Massachusetts Appeals Court denied coverage to homeowners whose son was sued for sexually abusing other children, based on an exclusion for sexual molestation from the definition of bodily injury.  In doing so, the court reiterated the state interpretative rule that "[w]ords in exclusionary clauses of insurance contracts should be construed in their usual and ordinary sense," id. at 1172 n.6 (alteration in original) (quoting Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 816 (Mass. 1999)) (internal quotation marks omitted), and rejected a reading that would "distort the plain meaning of the clause," id.

In this context, the plain meaning of "care" in the Abuse or Molestation Exclusion here accords with the dictionary

---

[1]  To the extent the insurers suggest on appeal that because Field, who saw the child extensively, was in a position to recommend the child be removed from the parents and so had "control," we disregard that argument, which was not presented to the district court.

definition that being "in the care of" includes "charge, supervision, management: responsibility for or attention to safety and well-being." Webster's Third New International Dictionary 338 (1993) (illustrating the definition of "care" by using it in the phrase "under a doctor's care"). The underlying complaint alleges the child was not only a patient of the insureds, but also that she was in the care of the Carson Center and Field when she was abused, and there is no serious dispute about this. The dispute is whether as against the facts alleged in the complaint, the term "care" as used in the Exclusion should have a more limited meaning.

A second canon of construction refutes the defendants' attempt to limit the term "care." "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Bos. Gas, 910 N.E.2d at 304 (quoting Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass. 2007)) (internal quotation marks omitted). The term "care" must be given a meaning and effect apart from the term "custody" and the term "control." The three words are connected by the disjunctive "or," signalling they are to be read separately. See Miller v. Miller, 861 N.E.2d 393, 401 (Mass. 2007) ("[T]he word 'or' is disjunctive unless the context and the main purpose of all the words demand otherwise." (quoting Bleich v. Maimonides Sch., 849 N.E.2d 185, 191 (Mass. 2006)) (internal quotation marks omitted)). It is self-

evident that a person may be "in the care" of another, without being "in the custody" of or "in the control" of another. Because the language of the Exclusion is clear, we do not construe it against the insurers. See Bagley, 720 N.E.2d at 816 n.2.

The core argument of the defendants is that, regardless of common meaning, the word "care" in the phrase "care, custody or control" should be treated as an insurance industry term of art, across all types of coverage, meaning "physical dominion or control." We disagree. In the context in which it is used, the term "care" is not a technical term of art at all. Further, it is not appropriate, in any event, to turn to definitions purported to be terms of art in property insurance law to define the term. The defendants rely on certain constructions of the phrase from property and construction law, not on constructions of the Exclusions for sexual and physical abuse from liability insurance for care givers. They cite to cases and insurance treatises for the propositions that "[p]hysical control is the hallmark of 'care, custody, and control'" and that "[t]he control exercised by the insured must be exclusive." (Quoting 9 Couch on Insurance § 126:22 (2011)). Those cases and treatises, however, all concern the "care, custody or control" of property, not persons.

The portions of both treatises defendants quote in support of their argument explicitly are concerned solely with the "care, custody or control" of property. They make no mention of

-14-

the application of that three-part term to persons. Defendants quote from a section in Couch on Insurance but omit its heading. The heading is "IV. Coverage Limitations Based on Insured's Relationship to Property. B. Phrased in Terms of Insured's Care, Custody, Control, Charge, and Similar Concepts." (Emphasis added) From that section defendants quote: "Physical control is the hallmark of 'care, custody, and control . . .'" but they again omit the end of that sentence: ". . . of another's property." 9 Couch on Insurance § 126:22 (emphasis added). In a related section in the same subchapter, the treatise states that "[p]olicies of liability insurance, especially those covering the operations of contractors and similar businesses, commonly contain provisions specifically excluding from coverage liability for injury or damage to property in the 'care, custody, or control of the insured.'" Id. § 126:20 (emphasis added).

The defendants also cite to the Construction Law volume of the Massachusetts Practice Series, which states that "[f]or property to be considered within the care, custody or control of the insured, the insured must have been in charge of the property or exercised dominion or control over the property at the time when the property was damaged." 57 Massachusetts Practice: Construction Law § 8.29 (2009-2010); see also id. ("One of the most common exclusions in a CGL insurance policy applicable to construction disputes is the 'care, custody, or control,' or 'owned property,'

-15-

exclusion."). By their terms, these treatise definitions of the phrase do not apply to the policies at issue here, which are concerned with the care, custody or control of a person.

The defendants also contend that Massachusetts courts have consistently interpreted "care, custody or control" to require physical dominion or control. All of the cases they cite save one concern policy language in which the exclusion is by its terms limited to the care, custody or control of property and so are not on point. See Rogala v. Farm Family Cas. Ins. Co., No. 0700049, 2009 WL 2231161, at *1 (Mass. Super. Ct. Mar. 23, 2009) (exclusion for damage to "[p]ersonal property in the care, custody or control of" insured applied where insured damaged truck (alteration in original)); Commerce Ins. Co. v. Empire Fire & Marine Ins. Co., No. 04-00825, 2006 WL 2439991, at *2 (Mass. Super. Ct. Aug. 9, 2006) (exclusion for "'[p]roperty damage' to . . . property owned or transported by the 'insured' or in the 'insured's' care, custody or control" applied where insureds damaged rental cars (alterations in original)), aff'd, 879 N.E.2d 1272 (Mass. App. Ct. 2008); Murray v. Noone, No. 9241, 1994 WL 69565, at *2 (Mass. Dist. Ct. Feb. 24, 1994) (exclusion for "injury or destruction of . . . property rented to or in the care, custody or control of the insured" applied where insured damaged vehicle). Further, defendants do not establish that even in the property context the term "care" is

-16-

necessarily limited to situations where there is also custody or control, but even if they did, that would not alter our analysis.

The one Massachusetts case defendants cite where a care, custody or control exclusion was applied to a person, and not to property, also does not advance their case because the harm befell someone in "custody."  In Jefferson Insurance Co. of New York v. City of Holyoke, suit was brought after a woman in the "protective custody" of the Holyoke police department committed suicide.  503 N.E.2d at 475.  The appeals court, in denying coverage based on an exclusion, held that the insurance policy contained a clause that excluded from coverage "claims arising from events during which the injured party was in the care, custody or control of any Insured under this policy other than during an overt attempt to escape from care, custody or control."  Id. at 475.  This case assists neither side because "there [was] no dispute that [the decedent] was in the 'care, custody or control' of the police department at the time she committed suicide."  Id. at 477.  The appeals court in Jefferson had no occasion to rule on whether a person in the care of an insured -- but not under the insured's custody or control -- is to be considered in the insured's "care, custody or control."[2]

---

[2] Cases defendants cite from other jurisdictions applying the "care, custody or control" exclusion to a person are similarly not on point because they involve the question of custody or control of a person, not a situation, as here, where a person was allegedly under an insured's care only.  See Am. Family Mut. Ins. Co. v. Nunley, No. CV 07-2276, 2009 WL 775424, at *5-6 (D. Ariz. Mar. 23, 2009) (holding that where employee of insured physically restrained

By contrast, when we review case law concerning exclusions for sexual and physical abuse of persons, cases from other jurisdictions give the word "care" its plain, ordinary meaning when used in abuse or molestation exclusions similar to that at issue here. In McAuliffe v. Northern Insurance Co. of New York, 69 F.3d 277 (8th Cir. 1995), an insurer refused to pay claims related to a priest's abusive sexual relationship with a parishioner, invoking an abuse or molestation exclusion essentially the same as the one in the present case and containing a "care, custody or control" clause. The court held that because the priest "was counseling the parishioner on a number of personal and spiritual issues . . . the parishioner was in [the priest's] care when the abuse occurred," id. at 279, and the exclusion applied. Although the victim in McAuliffe was abused by the same person she was in the care of, that distinction is irrelevant to a determination of what "in the care of" means.

In Children's Aid Society of Montgomery County v. Great American Insurance Co., the court considered an abuse or

_____

independent contractor on insured's premises, independent contractor was not in insured employer's "care, custody or control"); Conn. Ins. Guar. Ass'n v. Daigle, No. CV054013240S, 2007 WL 806375, at *5 (Conn. Super. Ct. Feb. 21, 2007) (finding the phrase "care, custody or control" in an exclusion to be ambiguous and interpreting it not to exclude coverage where insured police officer misled three young women to pose for nude photographs as part of a fictitious sting operation, and stating the young women "were always free to leave, free to stop participating in the 'sting operations' and do not seem to be in any way in the custody, control or care of" the insured).

-18-

molestation exclusion which was substantially identical to the one at issue here and contained a "care, custody or control" clause. The court applied those terms "according to their usual English definitions" and determined that "[t]he dictionary definition of 'care' that is most applicable to the instant case is 'charge, supervision[,] management: responsibility for or attention to safety and well-being,'" 1995 WL 251374, at *4 (quoting Webster's Third New International Dictionary 338 (1986)), the same ordinary meaning we give "care." In that case, the insured agency had agreed to "provide child care services to children and youth referred to it by" Montgomery County, to provide "each child with the care needed," and to share responsibility with the county for the children's medical care and clothing. Id. The court held the insured "exercised a significant amount of care, custody and control over the foster children." Id. The court also emphasized that "under any conditions, [the insured] need only have exercised 'care, custody or control' over [the child victim of abuse] for the exclusion to be applicable." Id. The court held that the exclusion precluded coverage.

In Nautilus Insurance Co. v. Our Camp Inc., the court held that an abuse or molestation exclusion like the one here precluded coverage of an insured summer camp operator where a child attending the summer camp was abused by a co-camper. The court stated that "[t]he express language of the exclusion is worded

broadly," 136 F. App'x at 137, and that "[t]he exclusion . . . unambiguously excludes coverage for all types of negligent conduct arising out of the abuse or molestation by anyone of any person while in the care, custody or control of any insured. To conclude otherwise would torture the plain language of the parties' agreement," id. at 138 (citation omitted). See also Erie Ins. Exch., 690 F. Supp. 2d 410 (holding that terms "abuse" and "molestation" in abuse or molestation exclusion were unambiguous and applying exclusion to preclude coverage of claims arising out of abuse of children at a preschool by another child at the preschool).

Defendants rely on the doctrine that "technical terms and words of art are given their technical meaning when used in a transaction within their technical field." Restatement (Second) of Contracts § 202(3)(b). This is a canon of construction accepted by Massachusetts courts, see W. Alliance Ins. Co. v. Gill, 686 N.E.2d 997, 999 (Mass. 1997), and it does not support the defendants' arguments here. The technical field at issue here is the provision of care to patients, not environmental damage, as in Gill. In that case, the court considered the term "pollutant" and related terms in a pollution exclusion to be "terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste." Id. The Massachusetts court was careful to say that terms were "terms of

-20-

art _in environmental law_." _Id._ (emphasis added). Thus, the type of hazard covered and type of insurance involved was important to whether the terms were technical terms of art. The court held that carbon monoxide produced by a malfunctioning or improperly operated oven in a restaurant was not a "pollutant" as that term was used in the exclusion. _Id._ at 1000-01.

_Gill_ is a far different case from this. _Gill_ does not support defendants' argument that the term "care" in the context not be given its ordinary meaning, or that it must be viewed as a technical term of art, much less that its meaning must be taken from another area of insurance law covering different hazards. Nor does _Gill_ purport to establish a rule governing interpretation of Professional Liability and Commercial Umbrella Coverage, much less for Abuse or Molestation Exclusions.

Other Massachusetts cases that cite the rule that technical terms of art should be given their technical meanings also support our conclusion. _Atlantic Mutual Insurance Co._ v. _McFadden_, 595 N.E.2d 762 (Mass. 1992), invoked the rule and was, like _Gill_, concerned with a pollution exclusion in an insurance policy and held that the terms "'discharge,' 'dispersal,' 'release,' and 'escape,' are terms of art _in environmental law_." _Id._ at 764 (emphasis added). _McFadden_ does not support defendants' argument for the same reasons _Gill_ does not.

In _City of Springfield_ v. _Department of Telecommunications & Cable_, 931 N.E.2d 942 (Mass. 2010), the Supreme Judicial Court invoked the technical term of art rule in interpreting a technical provision in a cable television service provider license and did so by resort to use of a definition from a state agency with telecommunications expertise. The court held that first, resort must be made to the ordinary language of the contract. _Id._ at 946. The court went on: "However, where, as here, we consider a specialized contract subject to a complex regulatory scheme, we recognize that language that appears to have an ordinary meaning may carry a technical meaning not obvious to a layperson." _Id._ at 947. The court addressed the question whether the term "pass through" was a technical term of art as applied to the treatment of franchise-related costs under renewal licenses. In answering that question, the court relied on the expertise of the state Department of Telecommunications and Cable, which had concluded that the term was a term of art. _Id._ at 947. The court accepted the department's view, "in light of the deference [the court] give[s] to the department's expertise and experience, particularly where this interpretive question arises under a complex statutory and regulatory framework." _Id._ 950. In the present case, we are not considering "a specialized contract subject to a complex regulatory scheme." _City of Springfield_ supports our analysis.

Indeed, <u>City of Springfield</u> cites to <u>Davis</u> v. <u>Dawson, Inc.</u>, 15 F. Supp. 2d 64 (D. Mass. 1998), which concluded that the term "deliver" in an agreement in the context of the delivery of a complete and accurate accounts receivable schedule did not have a technical meaning. <u>Id.</u> at 121. Applying the rule that the usual and ordinary meaning controls, the court gave "deliver" its common meaning. <u>Id.</u> at 122.

These cases reinforce that the plain and ordinary meaning rule applies and that the preconditions for applying the technical term of art rule are not met here. Further, they support our view that the technical term of art rule applies to the specific field of expertise involved, and does not justify abandonment of the ordinary meaning rule where that specific technical field is not involved. Indeed, in <u>City of Springfield</u>, the SJC cited to the Restatement (Second) of Contracts, <u>see</u> 931 N.E.2d at 947, which states that "technical terms and words of art are given their technical meaning when used in a transaction <u>within their technical field</u>" unless a different intention is manifested. Restatement (Second) of Contracts § 202(3) (emphasis added). As we have said, a body of law has developed around Abuse or Molestation Exclusions that is separate from the body of law regarding "owned property" exclusions upon which defendants rely.

Further, as the district court stated, "[t]he use of the word 'care' in relation to a physical object is necessarily much

-23-

different from the use of the same term in relation to a child receiving medical or therapeutic services." Valley Forge, 2011 WL 864802, at *3. Defendants admit this difference, stating "[t]here is no such thing as non-possessory 'care' of personal property." Non-possessory care of a person is an ordinary event.

Moreover, we reject the defendants' related argument that because other coverage clauses in the policies are concerned with property damage, we must adopt their two-step proposition that (1) in property damage coverage the term "care" can never mean anything other than "custody" and "control," and (2) because the different coverage parts are all contained in one policy, the terms "care, custody or control" must have the same meaning throughout all the types of coverage provided in the same policy. As to the first premise, we have no occasion to pass on the terms of the property damage coverage which are not at issue in this case. As such, the second step does not necessarily follow from the first. Even more importantly, the argument is barred by the Massachusetts ordinary meaning rule and as the defendants must admit, the ordinary meaning of care of persons is different.[3]

The defendants make a separate argument from their technical term of art argument. They argue the district court's

---

[3] By contrast with property cases, it would be rare in ordinary usage for property to be "in the care" of another without the other's having some sort of custody or control over the property.

construction of "care" requires that word to be construed one way in the Professional Liability Exclusion and another way in an endorsement to the Commercial General Liability (CGL) Coverage. To be precise, they point to the CGL Coverage part and to the Sexual or Physical Abuse or Molestation Specified Liability Coverage Endorsement. The CGL endorsement excludes coverage for "'bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of . . . [t]he actual or threatened abuse or molestation . . . of a 'patient' or 'resident' of the insured while in the care, custody or control of any insured."

While the argument is unclear, defendants appear to argue that the definition of "patient" in the CGL endorsement refers to recipients of care and that use of the ordinary meaning of the term "in the care of" renders the word "patient" surplusage. They invoke two Massachusetts cases, J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 378 (Mass. 1986) ("[E]very phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." (alteration in original) (quoting Charles I. Hosmer, Inc. v. Commonwealth, 19 N.E.2d 800, 804 (Mass. 1939)) (internal quotation marks omitted)), and S.D. Shaw & Sons, Inc. v. Joseph Rugo, Inc., 180 N.E.2d 446,

449 (Mass. 1962) ("An interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable." (quoting Sherman v. Emp'rs Liab. Assurance Corp., Ltd., 178 N.E.2d 864, 866-67 (Mass. 1961)) (internal quotation marks omitted)), for the proposition that terms should not be interpreted to create surplusage. "Patient" is defined in the CGL endorsement as "mentally, physically, developmentally disabled, mentally disabled and /or economically disadvantaged persons who are non-resident recipients of the care services provided by" the Carson Center. Defendants argue that if "care" is construed to mean the outpatient care provided by the insureds, the use of "care" in this endorsement is surplusage because a "patient" is necessarily in the "care" of a person providing treatment.

We go back to what we said at the start -- defendants' reading both departs from the ordinary meaning rule and equates care with custody or control and so renders "care" in that three-part term meaningless. The defendants' precise argument assumes that under Massachusetts insurance law, the ordinary meaning rule is trumped by a no-surplus-language rule. But we see no basis for that assumption, and the cases cited to us do not stand for that proposition. The test is not one of redundancy, but of meaningfulness. Terms in a contract may, when applied to certain factual scenarios, sometimes overlap. But those terms still have

different, independent meanings.  The plain, ordinary meaning given to "in the care" of does not render either of the two terms of the CGL endorsement "meaningless."  S.D. Shaw & Sons, 180 N.E.2d at 449.[4]

In any event, we disagree, as did the district court, that there is surplusage here.  As the district court recognized, a patient who received "care services" on only a single occasion or infrequently is not necessarily "in the care" of a provider in relevant terms.  Valley Forge, 2011 WL 864802, at *4.  We do not need to decide at what point a recipient of "care services" is considered to be "in the care" of a treatment provider; we only decide that on the facts alleged by Murphy in the underlying suit, the child was clearly in the care of Field and the Carson Center.[5]

Finally, the defendants present arguments that the Exclusions make coverage illusory and leave them stripped of coverage that an objectively reasonable person would have expected

---

[4] Further, the rule of giving meaning to every phrase is still governed by two other principles: that it be done "whenever practicable" when construed with other terms and that the construction be "a workable and harmonious means for carrying out and effectuating the intent of the parties."  J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 378 (Mass. 1986) (quoting Charles I. Hosmer, Inc. v. Commonwealth, 19 N.E.2d 800, 804 (Mass. 1939)) (internal quotation mark omitted).  Our construction is in accordance.

[5] The variant of this argument as to Coverage D of the CGL Coverage fails for similar reasons.  The parties agree Coverage D is inapplicable to this matter, and it is not contained in the Umbrella policies.

-27-

to have.  See McGregor v. Allamerica Ins. Co., 868 N.E.2d 1225, 1227 (Mass. 2007) ("When interpreting an insurance contract, [courts are to] 'consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'" (quoting Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990))).  Defendants suggest that at least the Professional Liability Coverage has no value to them if coverage for this type of physical abuse is excluded.  See Liberty Mut. Ins. Co. v. Tabor, 553 N.E.2d 909, 912 (1990) ("A provision in an insurance policy that negates the very coverage that the policy purports to provide in the circumstances where the person is liable is void as against public policy.").

That is simply not so.  There are many instances of professional malpractice that are covered, which are not concerned with sexual or physical abuse.  Indeed, many usual professional malpractice claims are in that first category and are covered.  The Exclusion precludes coverage on the limited occasions where the damages flow from sexual or physical abuse by another of someone in the care of the insured.  As explained earlier, that is the very purpose for the Abuse or Molestation Exclusion since its creation.  Nor is this a case in which application of the Exclusion defeats an objectively reasonable policyholder's expectations of coverage.

-28-

Since the Exclusion was not ambiguous, the Carter Center and Field had no reasonable expectation of coverage.[6]

In short, we agree with the reasoning of the district court and affirm.  No costs are awarded.

**-- Dissenting Opinion Follows --**

---

[6] We also note the tension between this argument by defendants and their argument that the term "care, custody or control" must not be given its plain and common meaning, but its "accepted meaning in the insurance industry" as to property insurance.  We have rejected the term of art argument, reinforcing the conclusion that there could be no reasonable expectation of coverage.  See Aguiar v. Generali Assicurazioni Ins. Co., 715 N.E.2d 1046, 1049 (Mass. App. Ct. 1999).  And we have explained that these Exclusions are well recognized in their own branch of insurance law.

**THOMPSON**, **Circuit Judge**, **dissenting**. The insurers' interpretation of the phrase "care, custody or control," which the majority has adopted, is certainly rational. However, I am not persuaded that the policy language indisputably supports this interpretation. In my view, the interpretation offered by the defendants is equally (if not more so) rational. Because I think my colleagues got it wrong when they disregarded the defendants' interpretation - rendering erroneous their conclusion that there is no insurance coverage - I dissent.

## I.

Under Massachusetts law, ambiguity exists when the language in an insurance policy "is susceptible to more than one rational interpretation." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4-5 (1st Cir. 2000). I discern such an ambiguity here.[7] As I said, the insurers'

---

[7] The majority cites to a string of cases for the proposition that abuse and molestation exclusions are generally found to be unambiguous. I do not find these cases particularly helpful. Two of the cases dealt with exclusions that did not contain the critical language. See Insights Trading Grp., LLC v. Fed. Ins. Co., Civil Action No. RDB-10-340, 2010 WL 2696750 (D. Md. July 6, 2010); Lincoln Cnty. Sch. Dist. v. Doe, 749 So.2d 943 (Miss. 1995). While the remaining cases did involve exclusions containing the "care, custody or control" requirement, the courts (with the exception of one, discussed below) did not specifically consider the phrase. Further, whether there was care, custody or control was not an issue because the abuse took place on the insured's premises. See Nautilus Ins. Co. v. Our Camp Inc., 136 F. App'x 134 (10th Cir. 2005) (abuse occurred at the insured summer camp); Erie Ins. Exch. v. First United Methodist Church, 690 F. Supp. 2d 410 (W.D.N.C. 2010) (abuse occurred at insured preschool); TIG Ins. Co. v. Smart Sch., 401 F. Supp. 2d 1334 (S.D. Fla. 2005) (abuse

-30-

interpretation of "care, custody or control" is sound.  There is a cogent argument that "care, custody or control" is not a term of art outside the property context and therefore the phrase should be treated as purely disjunctive with an ordinary meaning applied to the word "care."  However, defendants' position is likewise logical.  A compelling argument can be made that "care, custody or control" is an insurance industry term of art, in both the context of property and persons, which requires physical dominion or control.  And in fact, I am surprised at how readily the majority disregarded this reasoned argument.  Since the majority has adopted the insurers' position and set forth its reasons for doing so, I will not rehash this point.  Let me focus on why the defendants' interpretation is rational.

---

occurred at insured school); TIG Ins. Co. v. Martin, No. CV 00-5766, 2003 WL 25796732 (E.D.N.Y. Feb. 28, 2003) (abuse occurred at insured's baseball camp); Sarah G. v. Me. Bonding & Cas. Co., 866 A.2d 835 (Me. 2005) (abuse occurred at insured motel); Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. Alliance Ins. Co., 757 A.2d 1074 (Conn. 2000) (abuse occurred at insured's preschool program).

The only case that did involve consideration of the verbiage "care, custody or control" was Children's Aid Soc'y of Montgomery Cnty. v. Great Am. Ins. Co., Civ. A. No. 91-7778, 1995 WL 251374 (E.D. Pa. Apr. 28, 1995).  The court there found no ambiguity in the exclusion (though its ambiguity analysis actually focused on the term "damages") and its reading of "care, custody or control" was consistent with the majority here.  Id. at *3-5.  I disagree with the first premise but do not quibble with the second. However, I do not think the majority's reading is the only rational one.

**II.**

In the property context, courts have consistently read the expression "care, custody or control" to denote physical dominion or control. See, e.g., Acadia Ins. Co. v. Peerless Ins. Co., 679 F. Supp. 2d 229, 241 (D. Mass. 2010) (applying New Hampshire law); Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co., 518 F. Supp. 2d 803, 810 (W.D. Va. 2007). The treatises cited by the defendants and considered by the majority reflect this. See, e.g., 9 Couch on Insurance § 126:22; 57 Massachusetts Practice: Construction Law § 8.29 (2009-2010). This was the district court's reading as well, and further seems to be a proposition accepted by the insurers. Nonetheless (though it does not cite to any case law or treatises in support) the majority does not accept that this phrase has such a set meaning in the property framework. I do not think I need to spend much time on this proposition. It seems beyond dispute that the expression "care, custody or control" routinely (if not always) signals physical dominion or control when pertaining to property. That being said, the question is whether the defendants' contention that this meaning should be extended to persons holds water.

The majority says it does not, dismissing the Massachusetts cases that defendants cite to as inapplicable because they only address "care, custody or control" of property or because, with respect to the one case that involved "care, custody

-32-

or control" of a person, custody was not disputed.  However, I take something different from these cases.  In particular, this case law demonstrates that in the instances where Massachusetts courts have applied an exclusion that required "care, custody or control," the insured actually exercised physical dominion or control over a person or property.  See Jefferson Ins. Co. of N.Y. v. City of Holyoke, 503 N.E.2d 474, 477 (Mass. App. Ct. 1987) (woman who committed suicide was in the custody of insured police department); Rogala v. Farm Family Cas. Ins. Co., No. 0700049, 2009 WL 2231161 (Mass. Super. Ct. Mar. 23, 2009) (damaged truck was possessed and controlled by the insured business owner); Commerce Ins. Co. v. Empire Fire & Marine Ins. Co., No. 04-00825, 2006 WL 2439991 (Mass. Super. Ct. Aug. 9, 2006), aff'd, 879 N.E.2d 1272 (Mass. App. Ct. 2008) (damaged rental cars were in the possession of insured renters/drivers); Murray v. Noone, No. 9241, 1994 WL 69565 (Mass. Dist. Ct. Feb. 24, 1994) (damaged vehicle was physically controlled by insured driver).  Notably, of all the cases cited by the majority where an abuse or molestation exclusion served to bar coverage, just one involved a situation where "care" alone was provided.  See McAuliffe v. Northern Ins. Co. of N.Y., 69 F.3d 277 (8th Cir. 1995) (exclusion applied where priest abused a parishioner that was under his care).  All the others involved scenarios where some type of custody or control was exerted over the victim.

Further endorsement for defendants' standpoint is found in the fact that Massachusetts courts accept the canon of construction that technical terms and words of art are given their technical meaning when used within their technical field. See Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 109 (D. Mass. 1998); City of Springfield v. Dep't of Telecomm. & Cable, 931 N.E.2d 942, 947 (Mass. 2010); W. Alliance Ins. Co. v. Gill, 686 N.E.2d 997, 999 (Mass. 1997); Atlantic Mut. Ins. Co. v. McFadden, 595 N.E.2d 762, 764 (Mass. 1992). Moreover, the courts have applied this canon to the interpretation of insurance policy exclusions. See W. Alliance Ins. Co., 686 N.E.2d at 999; Atlantic Mut. Ins. Co., 595 N.E.2d at 764. Nonetheless the majority dismisses this canon's applicability. I am not persuaded by their reasoning.

First, the majority distinguishes the various Massachusetts cases that apply the canon because they either involve a different technical field, see W. Alliance Ins. Co., 686 N.E.2d at 999 (involving environmental law); Atlantic Mut. Ins. Co., 595 N.E.2d at 764 (same), or a specialized contract governed by regulations, see City of Springfield, 931 N.E.2d at 947 (involving a cable television service provider license). This seems beside the point to me. It does not matter that we are dealing with a different technical field; these cases still have bearing on our analysis as they are examples of Massachusetts courts applying a technical meaning to a term of art contained in

-34-

an insurance policy or contract. Second, the majority emphasizes the district court's finding that "care" of an object is necessarily different than the type of "care" provided to a recipient of medical or therapeutic services. I do not disagree, but it seems the majority and I are of two minds on the significance of this point. The defendants' position is that "care" should not be read alone but as part of the phrase "care, custody or control" - an insurance industry term of art. As I have likely made clear at this point; this makes sense.

What is more, this ordinary meaning reading of "care" advocated by the majority is not ironclad. "Words in an agreement are given their ordinary and usual sense 'unless it appears that [the words] are to be given a peculiar or technical meaning.'" City of Springfield, 931 N.E.2d at 947 (quoting Davis, 15 F. Supp. 2d at 109). And insurance policy language is interpreted based on both the common and the technical understanding of the words. See id. at 947 (citing Lodge Corp. v. Assurance Co. of Am., 775 N.E.2d 1250, 1252 (Mass. App. Ct. 2002)). One could certainly see how this interplay between common and technical understandings would lend itself to the formulation of two (not one) rational readings of the verbiage "care, custody or control."

As for the majority's slant that the word "care" must be given meaning and effect separate from "custody" and "control"; such a reading is certainly consistent with canons of construction.

Nonetheless, crediting the rationality of the defendants' position, which I have, this canon is inapplicable since the phrase "care, custody or control" needs to be read as a whole and treated as a term of art. Furthermore, the corresponding position taken by the majority that the word "or" should be treated as disjunctive "unless the context and the main purpose of all the words demands otherwise," Miller v. Miller, 861 N.E.2d 393, 401 (Mass. 2007) (quotation marks and citation omitted), is equally supportive of the defendants' and the insurers' position. Defendants say context demands otherwise; insurers say the opposite. The majority has disregarded defendants' position as without merit and again, on this point, we part ways.

The majority also made quick time with the defendants' argument that the Exclusions must be read in conjunction with the other policy provisions that used the phrase "care, custody or control" but I think the argument is compelling. Courts must construe an insurance contract as a whole. See Am. Home Assurance Co. v. Fore River Dock & Dredge, Inc., 321 F. Supp. 2d 209, 216 (D. Mass. 2004); Hakim v. Mass. Insurers' Insolvency Fund, 675 N.E.2d 1161, 1166 n.11 (Mass. 1997). In this case, each of the policies at issue contained the expression "care, custody or control" at least a dozen times. With the exception of the various abuse and molestation provisions (and one provision regarding dogs), the phrase was used exclusively in the context of property. And as

noted, the insurers appear to concede that "care, custody or control" has a certain meaning in the property context. Applying this meaning throughout the policies is consistent with Massachusetts law that contracts be read as a whole. See Am. Home Assurance Co., 321 F. Supp. 2d at 216; Hakim, 675 N.E.2d at 1166 n.11.

Finally, I agree with the defendants that the insurers' tack - now the majority's holding - defeats the reasonable expectation of an insured. When construing insurance polices, Massachusetts courts "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." McGregor v. Allamerica Ins. Co., 868 N.E.2d 1225, 1227 (Mass. 2007). It seems to me that a reasonable insured would expect to be covered in precisely the facts at hand. By nature of the services it offers, the Carson Center undoubtedly provides service and treatment to those who are suffering physical and sexual abuse. A reasonable insured would expect that errors that occur during the assistance and treatment of these persons - including the negligent failure to recognize the signs of abuse - would be fully covered by professional liability insurance. In this final respect, defendants' interpretation of the phrase "care, custody or control" is once again solid.

This brings me to the end result. Where there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it. See Makrigiannis v. Nintendo of Am., Inc., 815 N.E.2d 1066, 1071 (Mass. 2004) (citing Trs. of Tufts Univ. v. Commercial Union Ins. Co., 616 N.E.2d 68, 72 (Mass. 1993)). Furthermore, "[c]onsistent with the Massachusetts general rule favoring insureds in policy interpretation," ambiguities in policy language are strictly construed against the insurer. Brazas Sporting Arms, Inc., 220 F.3d at 4. And finally, "[e]xclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured." City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford, 846 N.E.2d 775, 777 (Mass. 2006).

These canons of construction point in only one direction. Faced with two rational interpretations of an exclusionary clause, we must strictly construe the Exclusion against the insurers, applying the interpretation of "care, custody or control" that is most beneficial to the defendants (i.e., the phrase requires physical dominion or control). Because neither Field nor the Carson Center exercised any such dominion or control over the child at the time the abuse took place, the Exclusion does not apply and coverage for the claims asserted exists. I therefore dissent.