## STATE ex rel. C. P. JOHNSON and Another v. DISTRICT COURT OF WASECA COUNTY and Others.[1]

February 7, 1913.

Nos. 18,034—(275).

**Change of venue.**

R. L. 1905, § 4096, providing that, if there are several defendants residing in different counties, the trial shall be had in the county upon which the

[1] Reported in 139 N. W. 947.

majority of them unite in demanding does not authorize a change of venue in an action to which a municipal corporation is a party defendant from the county in which such municipality is located, though a majority of the individual defendants unite in demanding a change to the county of their residence.

C. P. Johnson and Carl P. Johnson obtained from this court an order directed to the district court for Waseca county, Hon. Arthur B. Childress, judge thereof, and the clerk thereof, to show cause why a peremptory writ of mandamus should not issue directing the officers above named to transfer the files and papers in the case of Dube v. City of Waseca, C. P. Johnson and Carl A. Johnson, co-partners as C. P. Johnson & Son, from the district court for Waseca county to the district court for Hennepin county. The facts are stated in the opinion. The respondents made return and answer to the petition for the order to show cause, and moved to dismiss the order. Order discharged.

*John Junell,* for relators.

*Senn & Gallagher* and *Moonan & Moonan,* for respondents.

PHILIP E. BROWN, J.

Order to show cause why mandamus should not issue to compel the allowance of a change of venue. On September 12, 1912, the relators, who were then, and still are, residents of Minneapolis, were sued in Waseca county, together with the city of Waseca, for wrongful death. On October 2, 1912, the relators duly demanded a change of venue to Hennepin county, appearing specially for that purpose, and, the same having been denied, this order to show cause was obtained.

"The real issue in the matter before us," says counsel for relators, "is the question of whether or not a transitory action may be removed, as against a municipality, from the county in which that municipality is located, to the county of residence of the majority of the defendants." But in our opinion such is not the issue, for actions against municipalities are inherently local. Pack Woods & Co. v. Township, 62 Mich. 122, 28 N. W. 746; Jones v. Town, 97 N. C. 86, 2 S. E. 346; Oil City v. McAboy, 74 Pa. St. 249; City v.

Superior Court, 4 Wash. 655, 30 Pac. 1053; City v. Fox, 60 Ohio St. 340, 54 N. E. 370; Heckscher v. Philadelphia (Pa.) 9 Atl. 281. This is the common-law rule, and we are satisfied that it has not, as claimed by the relators, been changed in this state.

R. L. 1905, §§ 4089, 4090, 4091, 4092, 4094, specifically provide that certain actions shall be local; section 4095 provides that "all actions not enumerated in [sections] 4089–4094 shall be tried in the county in which one or more of the defendants resided when the action was begun"; and section 4096 provides that, "if there are several defendants residing in different counties, the trial shall be had in the county upon which the majority of them unite in demanding, or, if the numbers be equal, in that whose county seat is nearest." It is upon these provisions that the relators rely, insisting that, as an action for tort against a municipality is not thereby made local, it must be deemed to be transitory. It is to be noted, however, even as asserted by the relators, that the statutory classification is based almost exclusively upon the nature of the action, and not upon the character of the defendant; and we do not think that from such a classification any intention is to be inferred to change the common-law rule as to actions against municipalities, the local character of which actions inheres in the very nature of the defendant.

Furthermore, section 4095 has no bearing upon the character of such an action, for under the same the venue in an action against a municipality may originally be laid in the county in which the municipality is situated, no matter how many individual defendants there may be.. The venue, when so laid, however, would be subject to change under section 4096, if such section applies to an action to which a municipality is a party defendant, and this is the ultimate question to be determined in this case. We do not think this section so applies, for, as we have stated above, actions against municipalities must still be regarded as local. The presumption is "that the legislature, in the enactment of statutes, does not intend to overturn long-established principles of law, unless such intention is made to clearly appear either by express declaration or by necessary implication." In re Garcelon, 104 Cal. 570, 584, 38 Pac. 414, 417, 32 L.R.A. 595, 601, 43 Am. St. 134, 139; 3 Dunnell, Minn.

Digest, 8958. And especially in a matter like the one in hand, in which every consideration of public policy leads to a contrary conclusion, an intention to change the common law will not be inferred, unless it is clearly made manifest.

In Phillips v. Baltimore, 110 Md. 431, 72 Atl. 902, 25 L.R.A. (N.S.) 711, it was held that the common law was not abrogated by the general acts relating to suits against corporations, though municipal corporations were not specifically excepted therefrom. "In our own state," said the court, at page 440, after reviewing authorities from other states, "Acts 1825, c. 114, authorized attachments to be laid 'in the hands of the plaintiff or of any other person or persons whatsoever, *corporate or sole,*' and in Mayor and City Council of Baltimore v. Root, 8 Md. 95, 103, the court held that the argument from inconvenience sanctioned the construction that the legislature did not design to include municipal corporations, and this has been the law of Maryland ever since. It is difficult to imagine any sound reason why this argument from inconvenience should forbid the process of attachment against a municipal corporation, while permitting it under any other form of process to be dragged from one end of the state to the other at great cost and inconvenience to the public, which constitutes the municipality. The magnitude and importance of the functions of municipal government are constantly increasing with the growth of population, and of the various and complex agencies employed in cities and towns in the public service, and these functions require the constant presence and watchfulness of those charged with their direction and management. To permit these great public duties to be hindered or delayed in their performance, in order that individuals or private corporations might more conveniently collect their private debts, would be to pervert the great object of the creation of municipal corporations."

Again, in Nashville v. Webb, 114 Tenn. 432, 85 S. W. 404, 4 An. Cas. 1169, it was held that, in view of the inherently local character of actions against municipalities, a statute authorizing counterpart summons to issue to any county where any of the defendants are most likely to be found, "where there are two or more defendants in any suit in courts of law or equity, or before justices of the peace,"

did not authorize such a summons against a municipality. "It is true," said the court at pages 434, 435, [of 114 Tenn; at page 405 of 85 S. W., 4 Ann. Cas. 1169,] "there is no statute which makes an action brought against a municipal corporation a local action. * * * But actions against municipal corporations are inherently local. These bodies cannot change their situs or their place of abode. They cannot remove from one place to another, and sojourn for a time at this point or that. They remain stationary; hence they must be sued where they are found—that is, in the county of their location. It is a misnomer, a misapplication of terms to speak of an action against such a body as transitory, no matter what the ground may be on which the right of action rests. Such actions are not only inherently local, but it is of the greatest importance to the welfare of such bodies, and of the citizens whom they serve, that their officers should be permitted to remain at home and discharge their public duties, instead of being called hither and thither over different parts of the state to attend to litigation brought against the city through the agency of counterpart writs."

The statute construed in that case was certainly as broad as, if not, indeed, broader than, R. L. 1905, § 4096, and yet the court did not hesitate to declare that municipalities did not come within its operation. Nor can we hesitate to hold that section 4096 is inapplicable to actions to which a municipal corporation is a party defendant; for such is not only required by considerations of public policy, but also by both authority and reason.

It is likewise worthy of note that the general policy to regard actions against municipalities as local is reflected in our statutes relating to proceedings against public officers. See R. L. 1905, § 4090, making actions against public officers for official misconduct local, and section 4237, exempting municipal officers from the necessity of answering garnishee summons anywhere except in the municipality.

Order to show cause discharged.