**UNITED STATES FIRE INSURANCE COMPANY, Appellant,**

v.

**Erland AMMALA, individually and d.b.a. Erland Ammala, defendant and third-party plaintiff, Respondent,**

**Wells Concrete Products Company, third-party defendant, Respondent.**

No. CX–82–916.

Supreme Court of Minnesota.

June 10, 1983.

Jardine, Logan & O'Brien, St. Paul, and George David Roes, Annandale, for appellant.

Stringer, Courtney & Rohleder and Owen L. Sorenson, St. Paul, for respondent Ammala.

Hanft, Fride, O'Brien & Harries and John D. Kelly and Richard J. Leighton, Duluth, for respondent Wells Concrete Products.

YETKA, Justice.

Brainerd Construction Services Company, Inc. (Brainerd), a general contractor for the State of Minnesota, brought an action in Aitkin County District Court against Erland Ammala, a subcontractor, to recover the cost of repairing damage to its construction project caused by Ammala's negligence. Because United States Fire Insurance Company (U.S. Fire) had paid Brainerd for the cost of repair, it was substituted for Brainerd as the real party in interest. Ammala subsequently impleaded Wells Concrete Products Company as a third-party defendant, claiming that Wells was negligent in the design and erection of the project.

Summary judgment in favor of Ammala on U.S. Fire's subrogation claim was initially denied by the district court and the matter went to jury trial. On January 28, 1982, the jury returned a special verdict in favor of U.S. Fire. In response to post-trial motions, the court ordered judgment NOV dismissing U.S. Fire's claim against Ammala. U.S. Fire appeals from the court's order dismissing its post-trial motions and granting those of Ammala. The third-party action against Wells was rendered moot by the trial court's ruling on the U.S. Fire claim. We reverse in part and remand.

In April 1979, the State of Minnesota awarded a construction contract to Brainerd for a storage facility in MacGregor, Minnesota. Brainerd was required to proceed in accordance with provided plans and specifications, to obtain builder's risk insurance coverage, and to obtain comprehensive liability coverage. The builder's risk coverage was to be maintained "for and in behalf of the State of Minnesota, the Architect and Engineer, the name of Contractor, Subcontractors and lower tier Contractors and Suppliers as joint assureds."

Brainerd obtained a builder's risk policy from U.S. Fire. This policy listed as named insureds the "State of Minnesota, Brainerd Construction Services Co., Inc., Subcontractors & Lower Tier Contractors & Suppliers as Joint Assureds," and included an "other insurance" clause stating that the policy was excess insurance.

On May 3, 1979, Brainerd and Erland Ammala Excavation Company executed a standard form Associated General Contractors (AGC) subcontract for the earthwork portion of the project. The subcontract required Ammala to obtain "general liability insurance and comprehensive automobile liability insurance, protecting the Sub-Contractor against claims for bodily injury or death or for damage to property occurring upon, in or about the Project * * *." The contract specifically excluded any requirement that Ammala obtain builder's risk insurance.

The subcontract also includes an indemnity clause:

The Sub-Contractor agrees to assume entire responsibility and liability for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of, resulting from or in any manner connected with, the execution of the work provided for in this Sub-Contract or occurring or resulting from the use by the Sub-Contractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Sub-Contractor or third parties, and the Sub-Contractor agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be, or may be claimed to be, liable, and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph, and the Sub-Contractor further agrees to obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph.

Ammala secured the requisite comprehensive general liability insurance coverage from Farm Bureau Mutual Insurance Company. An "other insurance" clause provided that the policy was primary insurance.

On August 27, 1979, while Erland Ammala was backfilling around the partially constructed storage building, he struck the building with his backhoe and caused substantial damage. After investigating Brainerd's claim under its builder's risk policy, U.S. Fire paid Brainerd $33,000, the claimed cost of repairing the damage caused by Ammala's negligence minus a $500 deductible.

Brainerd initiated an action against Ammala, alleging negligence and $33,500 in damages. Ammala claimed that the action could not be brought because Ammala was a named insured under the builder's risk policy written by U.S. Fire. U.S. Fire was substituted as the real party in interest by virtue of its payment to Brainerd for damages incurred. Ammala brought a third-party action against Wells Concrete Products Company, a co-subcontractor and the manufacturer and erector of the pre-

stressed concrete, alleging Wells' negligence in the design and manufacture of the building.

By special verdict, the jury found Ammala 72% negligent, Wells 28% negligent, and the State of Minnesota 0% negligent.

Ammala moved for judgment NOV or amended findings dismissing U.S. Fire's claim. U.S. Fire moved for an order granting prejudgment interest, attorney fees, and increasing damages by $3,000. Wells moved for judgment NOV or a new trial. The court granted Ammala's motion for judgment NOV, finding that Ammala was not liable to U.S. Fire because it was a named insured under the U.S. Fire builder's risk policy. The court denied U.S. Fire's motions and determined that Wells' motions were rendered moot by the judgment NOV in favor of Ammala. U.S. Fire brought timely appeal to this court.

The issues raised on appeal are:

1. Is the writer of a general contractor's builder's risk insurance policy precluded from maintaining an action against a negligent subcontractor to recover the amount of damages paid to the general contractor as a result of damage to the construction project caused by the subcontractor?

2. Is the builder's risk insurer entitled to prejudgment interest and attorney fees?

3. Did the trial court err in denying third-party defendant's motion for judgment NOV based on the claim that the jury verdict was contrary to the evidence and applicable law?

Ammala asserts that the determinative issue in this case is whether Ammala is a co-insured under the U.S. Fire builder's risk policy because an insurer cannot maintain a subrogation claim against its own insured. 16 G. Couch, Cyclopedia of Insurance Law § 61:136 (2d ed. rev. 1983); 6A J. Appelman, Insurance Law and Practice § 4055 (1972); *see also Transamerica Insurance Co. v. Gage Plumbing & Heating Co.*, 433 F.2d 1051, 1055 (10th Cir.1970); *E. C. Long, Inc. v. Brennan's of Atlanta, Inc.*, 148 Ga.App. 796, 803, 252 S.E.2d 642, 647 (1979); *St. Paul Fire & Marine Insurance Co. v. Mur-*

*ray Plumbing and Heating Corp.*, 65 Cal. App.3d 66, 75, 135 Cal.Rptr. 120, 125 (1976). *J. F. Shea Co., Inc. v. Hynds Plumbing & Heating Co.*, 96 Nev. 862, 865, 619 P.2d 1207, 1209 (1980).

Ammala is clearly a co-insured under the U.S. Fire policy by virtue of the listing of "Subcontractors & Lower Tier Contractor's" as joint assureds. If the general rule is applied, Ammala is not liable as a subrogee unless the policy coverage does not extend to the type of damage caused by the subcontractor.

This case, however, does not turn on the subrogation issue. It is one thing to hold that an insurer cannot sue its insured in the normal setting. With that general principle, we agree. We do not, however, believe that to be the situation in this lawsuit. Counsel at oral argument agreed that if Ammala is not covered by his own policy of insurance with Farm Bureau Mutual Insurance Company, he is protected as an insured under the builder's risk policy with United States Fire Insurance Company. Thus, what we really have if we pierce through form to substance is a lawsuit between two insurance companies.

Two derivative questions are thus presented: Is Ammala protected by the Farm Bureau policy? If protected, can U.S. Fire collect from Farm Bureau the money it paid out to Brainerd? We believe that it can on general contract principles and the principle of subrogation need not be invoked at all.

First, if Brainerd had taken out a general builder's risk policy and that policy had contained no limitations, no excess coverage clause, and no loss payable clause, U.S. Fire would not be able to collect against Ammala or Farm Bureau on any theory, contractual or otherwise.

In this case, however, all three clauses were inserted in the policy written by U.S. Fire—a loss payable clause, express limitations, and an "other insurance" clause that contained specific language as to excess insurance. Brainerd's contract with Ammala contained an indemnity clause and Ammala's policy with Farm Bureau clearly states that it is primary insurance. Accordingly,

if, in fact, Ammala's action in this case was covered by Farm Bureau's policy—a matter yet to be decided in a separate pending lawsuit—then U.S. Fire is entitled to be reimbursed by Ammala and Farm Bureau. This is so simply because we must assume that the parties, including the insurance companies, were familiar with the various contracts among the parties and the various liabilities assumed thereunder. We cannot isolate each particular transaction from the overall scheme of construction. Ammala was an insured of U.S. Fire only to the extent that its own policy with Farm Bureau did not provide coverage. U.S. Fire is not able to sue Ammala to that extent. U.S. Fire, however, may sue Ammala and Farm Bureau to the extent that Ammala and Farm Bureau contracted to assume primary liability and primary coverage. Farm Bureau agreed to pay for certain risks as a primary insurer—U.S. Fire assumed risk as an excess carrier only for those same risks covered by Farm Bureau. Thus, on general contract theories, U.S. Fire can be reimbursed from Farm Bureau, the real party in interest. It appears to us that when U.S. Fire was substituted as a party for Brainerd, Farm Bureau should have likewise been made a party. The separate action pending to determine whether the Farm Bureau policy covered the damages here should have been consolidated with this lawsuit.

The jury found Wells 28% negligent, Ammala 72% negligent, and the State of Minnesota 0% negligent. The only evidence in the record supporting the negligence of Wells is the testimony of John Carroll, an expert on accident reconstruction. Carroll testified that the building, as designed and erected by Wells, did not meet industry standards for capacity to withstand erection loads.

■ Undisputed evidence in the record indicates that Wells fully complied with all specifications and conditions contained in its contract with the state through Brainerd. The only contractual duty owed to Ammala arose from this contract. Since the contract was not breached, no duty to Ammala could have been breached and, thus, no liability can be found.

■ Even assuming that Wells bore a duty to exceed the standards created by the contractual relationship, Wells cannot be found to be negligent unless the state is also found negligent. To the extent that the contract specifications were themselves negligent, the state would, of necessity, have to be found to some degree negligent. Since the jury held the state 0% negligent, its verdict is irreconcilable with any finding of negligence against Wells. In addition, our review of the record reveals that, "taking the evidence in the light most favorable to the verdict and giving the adverse party the benefit of every influence reasonably deductible therefrom, the evidence as a whole manifestly and so overwhelmingly preponderates to the contrary as to be practically conclusive against the verdict." *Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11, 14–15 (Minn.1979) (quoting *Cofran v. Swanman,* 225 Minn. 40, 42, 29 N.W.2d 448, 450 (1957)). If the trial court had considered Wells' motion for judgment NOV, it would have been compelled to grant it.

The trial court must be reversed and the case remanded with instructions to grant judgment notwithstanding the verdict in favor of Wells. The judgment notwithstanding the verdict entered in favor of Ammala must be vacated, and the jury's verdict reinstated except that a finding of 100% negligence on the part of Ammala shall be substituted and judgments shall be entered accordingly. The lawsuit to determine whether Farm Bureau's policy covers the damage caused by Ammala shall proceed to final disposition. Following that determination, if it is found Farm Bureau's policy is applicable, Farm Bureau will be responsible to pay the judgment against Ammala. If, however, the Farm Bureau policy is found inapplicable, the judgment against Ammala is to be vacated.

Reversed and remanded.