HUDSON, Justice.
Minnesota Statutes § 60A.41(a) (2016) prohibits an insurance company from "proceed[ing] against its insured in a subrogation action where the loss was caused by the nonintentional acts of the insured." Depositors Insurance Company, which insured a motor home owned by Karavan Trailers, Inc., seeks to proceed in a subrogation action against Craig Dollansky, who rented the motor home from Karavan. At issue is whether Minn. Stat. § 60A.41(a) bars Depositors from proceeding against Dollansky in a subrogation action. We hold that it does.
FACTS
Craig Dollansky signed a rental agreement with Karavan for a 2001 Newell Motor Home ("the RV"). The RV caught fire while Dollansky was driving it in Nebraska. The cause of the fire is unknown, but nothing in the record suggests that intentional acts by Dollansky caused the fire or *686 the subsequent damage to the RV. The damage to the RV totaled $204,895.05.
The rental agreement provided that Dollansky was responsible for all damages to the RV during the term of the agreement, regardless of the cause of the damage. Dollansky had obtained an extension of his personal-vehicle insurance for the RV, as required by the rental agreement. After the fire, Karavan submitted a claim for the full amount of the damages to Dollansky's insurer, American Family Insurance. American Family paid Karavan $4,500-that is, the $5,000 deductible set out in Karavan's insurance policy with Depositors minus the $500 deposit Dollansky had paid to Karavan. American Family denied the remainder of Karavan's claim.
After American Family's denial of the vast majority of the claim, Karavan submitted a claim to its own insurer, Depositors. Depositors paid Karavan $204,895.05 (the full amount of the damages) and then filed a complaint against Dollansky,[1] alleging that Depositors was subrogated to the rights of Karavan in the same amount.
Depositors and Dollansky filed cross-motions for summary judgment. Dollansky argued that Minn. Stat. § 60A.41(a) barred Depositors from subrogating against Dollansky because he was an "insured" under Karavan's policy with Depositors. Minnesota Statutes § 60A.41(a) states that "[a]n insurance company providing insurance coverage or its reinsurer for that underlying insurance coverage may not proceed against its insured in a subrogation action where the loss was caused by the nonintentional acts of the insured." Depositors disagreed and argued that Dollansky was not an "insured" because he had not purchased a policy from Depositors. Alternatively, Depositors argued that Dollansky was not an "insured" because its policy did not provide Dollansky with coverage for the damage caused to the RV.
The district court examined the policy Depositors issued to Karavan and focused on the policy's definition of "insured" in "Section V-Definitions": "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." The district court found that because the "Who Is An Insured" provision contained in Section II of the policy defines "insured" as including "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow," Dollansky was an "insured" for purposes of Minn. Stat. § 60A.41(a) because Karavan permitted Dollansky to use the covered vehicle, in this case, the RV. Accordingly, the district court denied Depositors' motion and granted Dollansky's motion, concluding that Depositors was barred by Minn. Stat. § 60A.41(a) from proceeding against Dollansky in a subrogation action. The district court then dismissed all claims against Dollansky.
Depositors appealed, and the court of appeals affirmed the district court. Depositors Ins. Co. v. Dollansky , 905 N.W.2d 513, 514 (Minn. App. 2017). The court of appeals rejected Depositors' argument that Dollansky was not an insured because he was not a named insured on Karavan's policy with Depositors. Id . at 516-17. Relying on the definitions contained in the policy with Depositors, the court held that Dollansky was an insured under the policy with Depositors. Id. at 518. Accordingly, the court concluded that " Minnesota Statutes section 60A.41(a) unambiguously bars Depositors' subrogation action." Id . Depositors *687 petitioned for review, which we granted.
ANALYSIS
This case requires us to interpret Minn. Stat. § 60A.41(a) and the insurance contract between Depositors and Karavan. We review questions of statutory construction de novo. Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000). "Interpretation of an insurance policy, and whether a policy provides coverage in a particular situation, are questions of law that we review de novo." Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co. , 825 N.W.2d 695, 704 (Minn. 2013).
"When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." Schroedl , 616 N.W.2d at 277 (citation omitted) (internal quotation marks omitted). To determine whether a statute is ambiguous, we interpret it "as a whole, and the words and sentences therein are to be understood in the light of their context. Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous. If a statute is unambiguous, we apply the statute's plain meaning." In re Dakota Cty. , 866 N.W.2d 905, 909 (Minn. 2015) (citations omitted) (internal quotation marks omitted).
Where a statute does not define a term, we may look to dictionary definitions to determine the common and ordinary meaning of a term. State v. Thonesavanh , 904 N.W.2d 432, 436 (Minn. 2017). Black's Law Dictionary defines "insured" as: "Someone who is covered or protected by an insurance policy.-Also termed assured ." Insured , Black's Law Dictionary (10th ed. 2014). Similarly, The American Heritage Dictionary defines "insured" as: "One who has or is covered by an insurance policy." The American Heritage Dictionary of the English Language 911 (5th ed. 2011). Webster's Third New International Dictionary, in contrast, defines "insured" as "a person whose life, physical well-being, or property is the subject of insurance: the owner of a policy of insurance: policyholder."Webster's Third New International Dictionary 1173 (2002).
These varied dictionary definitions permit at least two reasonable interpretations of the word "insured" in Minn. Stat. § 60A.41(a) : it could mean any party covered by some part of the insurance policy, or it could mean any party who is covered by the specific section of the insurance policy that applies to the particular loss at issue. Thus, it appears that Minn. Stat. § 60A.41(a) is ambiguous. See Thonesavanh , 904 N.W.2d at 435 (explaining that a statute subject to more than one reasonable interpretation is ambiguous).
Depositors argues, however, that the first of these interpretations is not reasonable because interpreting Minn. Stat. § 60A.41(a) to encompass all persons covered by the policy would make Minn. Stat. § 60A.41(b) (2016) superfluous. The court of appeals has held that Minn. Stat. § 60A.41(b) prohibits subrogation when two different policies, owned by two different persons but provided by the same insurance company, are implicated in the same loss. See Ill. Farmers Ins. Co. v. Schmuckler , 603 N.W.2d 138, 141 (Minn. App. 1999), rev. denied (Minn. Feb. 23, 2000). That is a different set of facts than we have here, where there is a single policy, owned by a single company (Karavan), covering two parties (Karavan and Dollansky). While some factual situations conceivably might fall under both Minn. Stat. § 60A.41(a) and Minn. Stat. § 60A.41(b), some circumstances will only meet the requirements of one or the other-thus, *688 the two provisions are not duplicative. Although we may read multiple parts of a statute together to determine whether language is ambiguous, the context provided by Minn. Stat. § 60A.41(b) does not compel us to conclude that the first interpretation of "insured" in Minn. Stat. § 60A.41(a) -any covered party-is unreasonable, as Depositors urges.
Nor are we persuaded by Depositors' argument that the Legislature intended the definition of "insured" in Minn. Stat. § 60A.41(a) to apply only to named insureds. Depositors' proposed interpretation of the statute is not reasonable. The Legislature could have used the phrase "named insured" if it intended to do so. The Legislature used "named insured" in two other provisions of chapter 60A. Minn. Stat. § 60A.0811, subd. 1(2) (2016) (" 'insured' means any named insured, additional insured, or insured under an insurance policy"); Minn. Stat. § 60A.196(f) (2016) ("If more than one insured from an affiliated group are named insureds on a single nonadmitted insurance contract...."). The Legislature also used "named insured" in numerous provisions throughout chapter 65B, which governs automobile insurance. We do "not add words to the statute that the Legislature did not supply," Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp. , 850 N.W.2d 682, 696 n.10 (Minn. 2014), so we will not add the word "named" to the statute before the word "insured" when the Legislature did not.
Finally, Depositors argues that any reading of Minn. Stat. § 60A.41(a) that includes Dollansky within the definition of "insured" is improper because the definition must be read in light of Minn. Stat. § 60A.41(d) (2016). Specifically, the latter provision states: "Nothing in this section prevents an insurer from allocating the loss internally to the at-fault insured for purposes of underwriting, agency, and claims information." Depositors contends that because it cannot allocate the loss to Dollansky, Minn. Stat. § 60A.41(a) cannot be interpreted to include Dollansky. This argument misinterprets the language of Minn. Stat. § 60A.41(d). The plain language of the statute only states that the statute does not prohibit such allocation. The fact that in some circumstances an insurer might not be able to internally allocate a loss does not mandate a limitation of the definition of "insured" in another provision.[2]
Thus, we conclude that Minn. Stat. § 60A.41(a) is ambiguous. We are then left to determine which of the two reasonable interpretations of the word "insured" in Minn. Stat. § 60A.41(a) -any party covered by some part of the insurance policy, or any party who is covered by the specific section of the insurance policy that applies to the particular loss at issue-best reflects the Legislature's intent.
Where statutory language is ambiguous, we can look to the legislative history of an enactment or to other related statutes. Great N. Ins. Co. v. Honeywell Int'l, Inc. , 911 N.W.2d 510, 518 (Minn. 2018) ("[L]egislative history can help us to clarify the Legislature's intent when a statute's language is ambiguous...."). The parties do not provide, nor have we otherwise located, any helpful legislative history for Minn. Stat. § 60A.41. Under another section of chapter 60A, however, "insured" has been defined as "mean[ing] any named *689 insured, additional insured, or insured under an insurance policy." Minn. Stat. § 60A.0811, subd. 1(2). Although this definition does not directly apply to Minn. Stat. § 60A.41, it would be consistent with interpreting "insured" as including anyone insured under the insurance policy.
When the language of a statute is ambiguous, we may also look to policy considerations to determine how the statutory language is best interpreted. See Lowry v. City of Mankato , 231 Minn. 108, 42 N.W.2d 553, 558 (1950) ; State ex rel. Johnson v. Dist. Court of Waseca Cty. , 120 Minn. 458, 139 N.W. 947, 948 (1913). Depositors argues that prohibiting subrogation against parties who are not named insureds will force insurers "to provide coverage they never intended to provide, which will only lead to increased premiums." Depositors claims that the ability to sue anyone who is not a named insured "keeps premiums down." Dollansky, on the other hand, argues that "broad-form indemnity (i.e. beyond one's own negligence)" should be disfavored. He contends that expanding an auto renter's liability for damages that the renter did not cause would be unfair.
In other cases involving the interpretation of insurance policies and determinations of coverage, we have acknowledged "the great disparity in bargaining power between insurance companies and those who seek insurance." Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co. , 366 N.W.2d 271, 277 (Minn. 1985). Ambiguities in an insurance policy "are generally resolved in favor of the insured." Nathe Bros. v. Am. Nat'l Fire Ins. Co. , 615 N.W.2d 341, 344 (Minn. 2000). "Additionally, we have stated that when interpreting an insurance policy, we will avoid an interpretation that will forfeit the rights of the insured under the policy, unless such an intent is manifest in 'clear and unambiguous' language." Id . These doctrines provide context for the wider realm of insurance litigation and inform our understanding of the underlying equities in insurance subrogation suits. The great disparity in power between insurance companies and insureds, and our general tendency to protect insureds' rights as against those of insurance companies, support a conclusion that public policy favors an interpretation that is broadly protective of the rights of insureds. This conclusion leads us to interpret the term "insured" in Minn. Stat. § 60A.41(a) consistently with that policy, lending support to an interpretation that broadly protects the rights of insureds against subrogation. We thus conclude that "insured" in Minn. Stat. § 60A.41(a) includes any person who has coverage under the insurance policy.
In interpreting a statute, we also look to our past jurisprudence. In particular, we are mindful of the presumption that "the Legislature does not intend to abrogate or modify a common-law rule unless it does so by express wording or necessary implication." Kremer v. Kremer , 912 N.W.2d 617, 623 (Minn. 2018). In this instance, however, our past jurisprudence provides no significant assistance, because we have not formally adopted an explicit formulation of a common-law anti-subrogation rule, nor have we discussed the purpose or scope of the common-law anti-subrogation rule that existed in Minnesota before the adoption of section 60A.41. Nevertheless, we consider the limited pre-statute Minnesota precedent available to evaluate whether our interpretation of the statute is consistent with those rulings. We conclude that it is.
In a case that predates Minn. Stat. § 60A.41, we held that the common-law rule that "an insurer has no right of subrogation against its insured" did not prohibit suit against a permissive user and his interpled *690 insurance company where an "express definition contained in the policy.... specifically state[d] that the insurance afforded shall not inure directly or indirectly to the benefit of the bailee for loss under collision coverage." Dairyland Ins. Co. v. Munson , 292 Minn. 141, 193 N.W.2d 476, 477-78 (1972). Because the defendant was "not an additional insured under the Dairyland policy," the common-law rule against subrogation did not apply and his interpled insurance company was liable for payment under his policy with it. Id. at 480. Dairyland makes clear that when applying the rule against subrogation, we rely on the definitions of "insured" contained in the insurance policy itself. But Dairyland is of limited use in determining the breadth of the prohibition against an insurer suing its own "insured," either at common law or under Minn. Stat. § 60A.41. In Dairyland the policy explicitly excluded coverage for the permissive user for the particular loss at issue, whereas in this case there is no such specific exclusion. Thus, Dairyland did not present the issue we must now decide.
The equities in Dairyland were also quite different. In Dairyland , the court sought to ensure that the defendant received the coverage he had paid for from his own insurance company, rather than allowing his insurance company to avoid liability and leave him responsible for the loss. By contrast, Dollansky's insurer American Family is not a party to this suit, and neither party has sought to join it as a party; thus no ruling we make here can impose a liability on American Family. Ignoring these substantive distinctions, the dissent nevertheless relies heavily on Dairyland to support its claim that the Legislature must have intended "insured" to mean only a party covered by the specific section of the insurance policy that applies to the particular loss at issue. These distinctions are critical to understanding Dairyland , and thus the dissent's reliance is misplaced.
In another pre-statute case, U.S. Fire Ins. Co. v. Ammala , 334 N.W.2d 631 (Minn. 1983), we acknowledged the general rule that "an insurer cannot sue its insured in the normal setting." Id. at 634. However, in that case we held that given the "overall scheme of construction," particularly the industry's standardized structure for contractor and subcontractor liability and all parties' "familiar[ity] with the various contracts among the parties and the various liabilities assumed thereunder," that case was not the typical setting and the general rule did not apply. Id. at 635. Ammala , in our view, is best interpreted as standing for the proposition that in industry-specific circumstances, it may be appropriate to impute knowledge to the various parties based on their familiarity with a standardized system and process. Ammala is of limited usefulness in determining the scope of the rule against subrogation, however, because in that case we explicitly stated that the "case ... does not turn on the subrogation issue," id. at 634, and indeed "the principle of subrogation need not be invoked at all." Id.[3]
*691 By contrast, in this case the issue of subrogation is squarely before us, and we are charged with interpreting the Legislature's rule barring subrogation in certain circumstances. We see no reason to take from Ammala 's narrow holding any significant lessons regarding the principles of subrogation that the Legislature may have had in mind when it enacted Minn. Stat. § 60A.41. In short, neither Dairyland nor Ammala shed much light on the ambiguity in the statute's language. More importantly, our interpretation of the statute as barring subrogation by an insurance company against anyone insured under the policy is consistent with the limited common law on the topic that existed in Minnesota before the statutory enactment. It therefore does not require the abrogation-that is, the abolition, annulment, or repeal-of any common-law rule regarding the antisubrogation doctrine. See Kremer , 912 N.W.2d at 623 (requiring clear legislative statement before interpreting legislation to abrogate common-law rules); Abrogate, Black's Law Dictionary (10th ed. 2014) ("To abolish (a law or custom) by formal or authoritative action; to annul or repeal.").
Finally, Depositors argues that it would be inequitable to bar a suit in subrogation against Dollansky, because Dollansky has his own insurance from American Family. But nothing in the text of the statute suggests that its meaning might vary depending on the existence or extent of other insurance. If we were to endorse Depositors' interpretation in this case, that interpretation would also apply in other cases even if the defendant has no other insurance, with potentially concerning results for individuals who cannot depend on their own insurance paying for any judgment.
After considering these various factors, we remain firm in our conclusion that the word "insured" in Minn. Stat. § 60A.41(a) encompasses any party covered by some part of the insurance policy at issue. Therefore, if Dollansky is covered by any part of Karavan's RV insurance policy with Depositors, Depositors is barred from bringing a suit in subrogation against Dollansky. We turn next to that question.
We determine whether an insurance policy provides coverage by looking to the language of the insurance policy itself. Eng'g & Constr. Innovations , 825 N.W.2d at 704. "Section V-Definitions" of Depositors' insurance contract with Karavan, which applies to the entire policy, states:
"Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.
The "Who Is An Insured" provision of "Section II-Liability Coverage" states:
1. Who Is An Insured
The following are "insureds":
a. You for any covered "auto".
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow....[4]
Dollansky clearly had permission to use the RV, which was a covered "auto" under the policy. He therefore met Section II's definition of an "insured," and was thus *692 provided at least some coverage under Depositors' insurance policy. Indeed, Depositors admitted in the summary judgment hearing, in its brief to our court, and at oral argument that Dollansky was covered by its policy as a permissive-use driver. Depositors provided insurance coverage to Dollansky and the loss was caused by the nonintentional acts of Dollansky, so Minn. Stat. § 60A.41(a) bars Depositors from proceeding against Dollansky in a subrogation action.
Contrary to the dissent's assertion, our ruling here creates no coverage that did not already exist. We rely directly on Depositors' admission that Dollansky was covered in part by the insurance policy. Depositors is a sophisticated party. While nothing we say here prevents Depositors from writing its insurance contracts differently in the future, it cannot escape the legal ramifications of its current policy by protesting that it did not know it would be prohibited from subrogating against one of its insureds under its policy.
We acknowledge that this result may seem to conflict with the RV rental contract Dollansky signed making him responsible for any damage to the RV. Nonetheless, our interpretation of the statute is appropriately driven by the language of the statute as well as the broader context of subrogation and public policy.
In circumstances such as these, if an insurance company believes that another insurance policy should be considered the primary policy, it can bring a declaratory judgment action to determine priority and eventually seek payment from the other insurance company as appropriate. Alternatively, the named insured can bring suit against another insured as needed, particularly in cases of breach of contract. In sum, there are options beyond subrogation suits to seek payment from other insureds. Depositors chose not to bring suit directly against American Family to determine priority of coverage. Instead, Depositors chose to pursue a subrogation suit against Dollansky as an individual rather than seeking payment from American Family. We are not compelled by the strategic choices that Karavan and Depositors made in bringing this suit to interpret the statute in a way that allows Depositors to recover. See St. Jude Med., Inc. v. Carter , 913 N.W.2d 678, 686 n.3 (Minn. 2018).
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
Concurring, Lillehaug, J., Gildea, C.J.
Dissenting, Thissen, J.
CONCURRENCE

The original complaint was filed against both Craig Dollansky and Julie Dollansky. Because Julie Dollansky did not sign the RV rental agreement, the parties stipulated that she was entitled to summary judgment, leaving only Craig Dollansky as defendant.

Moreover, Depositors itself argues that Karavan is at risk of increased premiums, which suggests that Depositors believes it would be permitted to allocate the loss to Karavan-giving Minn. Stat. § 60A.41(d) meaning even where "insured" is interpreted to include Dollansky under Minn. Stat. § 60A.41(a).

We also note that in Ammala , unlike here, there was a separate action brought seeking reimbursement from Ammala's insurer. Id. at 635. The decision in Ammala was procedurally complicated by the failure to consolidate the two actions. Id. Although judgment was entered against Ammala for his negligence, we stated that if his insurance policy was applicable, his insurance company would be responsible to pay that judgment. Id. If, however, Ammala's insurance policy was found inapplicable, then we ruled that the judgment against him was to be vacated. Id. No such option is available here, because Depositors has not sought payment from American Family directly. But Ammala is most reasonably read as holding that even when the limited exception to the general rule applies, the appropriate source of payment is an insurance company, not the insured person.

There are exceptions listed under "Who Is An Insured," but none of these exceptions are alleged to apply to Dollansky.